<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

RUSSELL CHRISTIE,                    :
                                     :    Civil Action No. 09-0805 (DMC)
                 Plaintiff,          :
                                     :
          v.                         :    OPINION
                                     :
S.A. DOUGLAS MACFARLANE,             :
et al.,                              :
                                     :
                 Defendants.         :

**APPEARANCES:**

Plaintiff <u>pro se</u>
Russell Christie
Metropolitan Detention Center
P.O. Box 329002
Brooklyn, NJ 11232

**CAVANAUGH**, District Judge

     Plaintiff Russell Christie, a prisoner currently confined at the Metropolitan Detention Center in Brooklyn, New York, seeks to bring this action pursuant to <u>Bivens v. Six Unknown Fed. Narcotics Agents</u>, 403 U.S. 388 (1971), alleging violations of his constitutional rights.

     At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

I.   BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff alleges that Special Agents Douglas MacFarlane and Bernard Riedel, Jr., in connection with a criminal investigation of Plaintiff, failed to follow procedures set forth in 18 U.S.C. § 2518 for interception of electronic communications, including failure to obtain advance judicial approval for the interceptions. More specifically, Plaintiff alleges that Agents MacFarlane and Riedel unlawfully accessed the NAMGLA[1] website, in April and June 2006, using an administrator level log-on provided by the website administrator, to "harvest" Internet Protocol addresses, including the IP address for a poster using the username "franklee," attributed by the government to Plaintiff.[2]

In addition, Plaintiff alleges that Special Agents Jacqueline A. Cristiano and David S. Magness gave false

_____

[1] "NAMGLA" is believed to be an acronym for "North American Man Girl Love Association."

[2] Plaintiff has unsuccessfully raised this issue in the criminal matter.  See United States v. Christie, Criminal No. 07-0332 (D.N.J.) (Docket Entries Nos. 51, 105).

This Court will take judicial notice of the dockets in other federal cases related to this action.  See Fed.R.Evid. 201; Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd., 181 F.3d 410, 426-27 (3d Cir. 1999) (federal court, on a motion to dismiss, may take judicial notice of another court's opinion, not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity).

2

information, allegedly in violation of 18 U.S.C. § 1038, to
obtain a search warrant, in July 2006, in connection with the
same criminal investigation.  More specifically, Plaintiff
alleges that the agents provided an affidavit that a certain
referenced video[3] was posted by the NAMGLA user named "franklee,"
when they should have known, based on electronic communications
with special Agent MacFarlane, that the video had been posted by
user "docmike."  Plaintiff alleges that, absent the erroneous
information, the warrant lacked probable cause.  In addition,
Plaintiff alleges that he was not allowed to read the warrant
when it was executed and that Agent Cristiano should have known
that Plaintiff resided at 68A Phillips Road as opposed to 68
Phillips Road, a separate address.[4]

Finally, Plaintiff alleges that Special Agent James Granozo
gave false information before a federal grand jury.[5]

---

[3] The challenged reference is to an 18-minute, 52-second
vide referred to on pages 13 and 14 of the affidavit.

[4] It appears that the original warrant was for 68 Phillips
Road and that, upon executing the warrant, the agents realized
that Plaintiff's mother resided at 68 Phillips Road and that
Plaintiff resided at the attached 68A Phillips Road.  According
to documents filed in the criminal action, agents then obtained a
search warrant for Plaintiff's residence at 68A Phillips Road.

[5] Plaintiff alleges that the information forming the basis
of this Complaint was provided to him by the government between
August 2008 and November 2008, as well as from trial testimony in
2008.  Thus, Plaintiff alleges that his Complaint, dated February
12, 2009, is timely.

On November 2008, a unanimous jury found Plaintiff guilty of eight criminal counts involving child pornography, premised upon six discrete postings to the NAMGLA webside.  See United States v. Christie, Criminal No. 07-0332 (D.N.J.).  By judgment entered June 29, 2009, Plaintiff was sentenced to a term of imprisonment of 180 months.  Plaintiff has appealed that judgment and the appeal is pending before the U.S. Court of Appeals for the Third Circuit.  See United States v. Christie, No. 09-2908 (3d Cir.).

In this action, filed after the jury verdict but before sentencing, Petitioner seeks compensatory and punitive damages.

II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all

4

reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

In addition, any complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint must plead facts sufficient at least to "suggest" a basis for liability. Spruill v. Gillis, 372 F.3d 218, 236 n.12 (3d Cir. 2004). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

> While a complaint ... does not need detailed factual
> allegations, a plaintiff's obligation to provide the
> "grounds" of his "entitle[ment] to relief" requires
> more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action will
> not do, see Papasan v. Allain, 478 U.S. 265, 286, 106
> S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to
> dismiss, courts "are not bound to accept as true a
> legal conclusion couched as a factual allegation").
> Factual allegations must be enough to raise a right to
> relief above the speculative level ... .

Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (citations omitted).

The Supreme Court then applied these general standards to a Sherman Act conspiracy claim.

> In applying these general standards to a § 1
> [conspiracy] claim, we hold that stating such a claim

5

requires a complaint with enough factual matter (taken
as true) to suggest that an agreement was made.  Asking
for plausible grounds to infer an agreement does not
impose a probability requirement at the pleading stage;
it simply calls for enough fact to raise a reasonable
expectation that discovery will reveal evidence of
illegal agreement.  And, of course, a well-pleaded
complaint may proceed even if it strikes a savvy judge
that actual proof of those facts is improbable, and
"that a recovery is very remote and unlikely." ...  It
makes sense to say, therefore, that an allegation of
parallel conduct and a bare assertion of conspiracy
will not suffice.  Without more, parallel conduct does
not suggest conspiracy, and a conclusory allegation of
agreement at some unidentified point does not supply
facts adequate to show illegality.  Hence, when
allegations of parallel conduct are set out in order to
make a § 1 claim, they must be placed in a context that
raises a suggestion of a preceding agreement, not
merely parallel conduct that could just as well be
independent action.

   The need at the pleading stage for allegations
plausibly suggesting (not merely consistent with)
agreement reflects the threshold requirement of Rule
8(a)(2) that the "plain statement" possess enough heft
to "sho[w] that the pleader is entitled to relief."  A
statement of parallel conduct, even conduct consciously
undertaken, needs some setting suggesting the agreement
necessary to make out a § 1 claim; without that further
circumstance pointing toward a meeting of the minds, an
account of a defendant's commercial efforts stays in
neutral territory. ...

Twombly, 127 S.Ct. at 1965-66 (citations and footnotes omitted).

   The Court of Appeals for the Third Circuit has held, in the

context of a § 1983 civil rights action, that the Twombly

pleading standard applies outside the § 1 antitrust context in

which it was decided.  See Phillips v. County of Allegheny, 515

F.3d 224, 234 (3d Cir. 2008) ("we decline at this point to read

Twombly so narrowly as to limit its holding on plausibility to
the antitrust context").

> Context matters in notice pleading.  Fair notice under
> Rule 8(a)(2) depends on the type of case -- some
> complaints will require at least some factual
> allegations to make out a "showing that the pleader is
> entitled to relief, in order to give the defendant fair
> notice of what the ... claim is and the grounds upon
> which it rests."  Indeed, taking Twombly and the
> Court's contemporaneous opinion in Erickson v. Pardus,
> 127 S.Ct. 2197 (2007), together, we understand the
> Court to instruct that a situation may arise where, at
> some point, the factual detail in a complaint is so
> undeveloped that it does not provide a defendant the
> type of notice of claim which is contemplated by
> Rule 8.  Put another way, in light of Twombly, Rule
> 8(a)(2) requires a "showing" rather than a blanket
> assertion of an entitlement to relief.  We caution that
> without some factual allegation in the complaint, a
> claimant cannot satisfy the requirement that he or she
> provide not only "fair notice," but also the "grounds"
> on which the claim rests.

Phillips, 515 F.3d at 232 (citations omitted).

More recently, the Supreme Court has emphasized that, when
assessing the sufficiency of any civil complaint, a court must
distinguish factual contentions -- which allege behavior on the
part of the defendant that, if true, would satisfy one or more
elements of the claim asserted -- and "[t]hreadbare recitals of
the elements of a cause of action, supported by mere conclusory
statements." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).
Although the Court must assume the veracity of the facts asserted
in the complaint, it is "not bound to accept as true a legal
conclusion couched as a factual allegation." Id. at 1950.  Thus,
"a court considering a motion to dismiss can choose to begin by

identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth." <u>Id.</u>

       Therefore, after <u>Iqbal</u>, when presented with a
motion to dismiss for failure to state a claim,
district courts should conduct a two-part analysis.
First, the factual and legal elements of a claim should
be separated.  The District Court must accept all of
the complaint's well-pleaded facts as true, but may
disregard any legal conclusions.  Second, a District
Court must then determine whether the facts alleged in
the complaint are sufficient to show that the plaintiff
has a "plausible claim for relief."  In other words, a
complaint must do more than allege the plaintiff's
entitlement to relief.  A complaint has to "show" such
an entitlement with its facts.  <u>See</u> <u>Phillips</u>, 515 F.3d
at 234-35.  As the Supreme Court instructed in <u>Iqbal</u>,
"[w]here the well-pleaded facts do not permit the court
to infer more than the mere possibility of misconduct,
the complaint has alleged-but it has not
'show[n]'-'that the pleader is entitled to relief.'"
This "plausibility" determination will be "a
context-specific task that requires the reviewing court
to draw on its judicial experience and common sense."

<u>Fowler v. UPMC Shadyside</u>, 2009 WL 2501662, 5 (3d Cir. August 18,

2009) (citations omitted).

    Where a complaint can be remedied by an amendment, a

district court may not dismiss the complaint with prejudice, but

must permit the amendment.  <u>Denton v. Hernandez</u>, 504 U.S. 25, 34

(1992); <u>Grayson v. Mayview State Hospital</u>, 293 F.3d 103, 108 (3d

Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); <u>Shane</u>

<u>v. Fauver</u>, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal

pursuant to 42 U.S.C. § 1997e(c)(1)); <u>Urrutia v. Harrisburg</u>

<u>County Police Dept.</u>, 91 F.3d 451, 453 (3d Cir. 1996).

III.  <u>Bivens v. Six Unknown Agents</u>

In <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 389 (1971), the Supreme Court held that a violation of the Fourth Amendment by a federal agent acting under color of his authority gives rise to a cause of action against that agent, individually, for damages.  The Supreme Court has also implied damages remedies directly under the Eighth Amendment, <u>see</u> <u>Carlson v. Green</u>, 446 U.S. 14 (1980), and under the equal protection component of the Fifth Amendment's Due Process Clause, <u>see</u> <u>Davis v. Passman</u>, 442 U.S. 228 (1979).  But "the absence of statutory relief for a constitutional violation does not necessarily mean that courts should create a damages remedy against the officer responsible for the violation." <u>Schreiber v. Mastrogiovanni</u>, 214 F.3d 148, 152 (3d Cir. 2000) (citing <u>Schweiker v. Chilicky</u>, 487 U.S. 412 (1988).

Relying upon <u>Bivens</u>, several lower federal courts have implied a damages cause of action against federal officers, under the Due Process Clause of the Fifth Amendment, for claims by federal pre-trial detainees alleging inadequate medical care or unconstitutional conditions of confinement.  <u>See</u>, <u>e.g.</u>, <u>Lyons v. U.S. Marshals</u>, 840 F.2d 202 (3d Cir. 1988); <u>Iqbal v. Hasty</u>, 490 F.2d 143 (2d Cir. 2007), <u>petition for cert. filed</u>, 76 U.S.L.W. 3349 (Dec. 17, 2007) (No. 07-0827); <u>Magluta v. Samples</u>, 375 F.3d

1269 (11th Cir. 2004); <u>Loe v. Armistead</u>, 582 F.2d 1291 (4th Cir. 1978), <u>cert. denied</u>, 446 U.S. 928 (1980).

IV.   <u>ANALYSIS</u>

A.   "Search" Claims

Plaintiff alleges that Defendants MacFarlane and Riedel violated his Fourth Amendment right to be free from unreasonable searches by accessing the NAMGLA website to "harvest" his IP address without first obtaining a warrant.  He alleges that Defendants Cristiano and Magness gave false testimony in their affidavits to obtain a search warrant, again in violation of his Fourth Amendment right to be free from unreasonable searches.  In addition, Plaintiff alleges that he was not allowed to read the search warrant.  Finally, Plaintiff alleges that the first warrant was for the wrong address.

As an initial matter, this Court must determine whether these Fourth Amendment claims may proceed during the pendency of Plaintiff's criminal matter.  See <u>Wallace v. Kato</u>, 549 U.S. 384, 127 S.Ct. 1091 (2007); <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994).

In <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), the Supreme Court rejected § 1983 as a vehicle to challenge the lawfulness of an extant criminal judgment.

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by

10

> executive order, declared invalid by a state tribunal
> authorized to make such determination, or called into
> question by a federal court's issuance of a writ of
> habeas corpus, 28 U.S.C. § 2254.  A claim for damages
> bearing that relationship to a conviction or sentence
> that has <u>not</u> been so invalidated is not cognizable
> under § 1983.

512 U.S. at 486-87 (footnote omitted).  The Court further

instructed district courts, in determining whether a complaint

states a claim under § 1983, to evaluate whether a favorable

outcome would necessarily imply the invalidity of a criminal

judgment.

> Thus, when a state prisoner seeks damages in a § 1983
> suit, the district court must consider whether a
> judgment in favor of the plaintiff would necessarily
> imply the invalidity of his conviction or sentence; if
> it would, the complaint must be dismissed unless the
> plaintiff can demonstrate that the conviction or
> sentence has already been invalidated.  But if the
> district court determines that the plaintiff's action,
> even if successful, will <u>not</u> demonstrate the invalidity
> of any outstanding criminal judgment against the
> plaintiff, the action should be allowed to proceed, in
> the absence of some other bar to the suit.

512 U.S. at 487 (footnotes omitted).  The Court further held that

"a § 1983 cause of action for damages attributable to an

unconstitutional conviction or sentence does not accrue until the

conviction or sentence has been invalidated."  <u>Id.</u> at 489-90.

Specifically addressing, albeit in <u>dicta</u>, whether a § 1983

suit, for damages attributable to an allegedly unreasonable pre-

trial search, would lie in advance of a judicial determination of

the invalidity of the related conviction, the Supreme Court said,

For example, a suit for damages attributable to an
allegedly unreasonable search may lie even if the
challenged search produced evidence that was introduced
in a state criminal trial resulting in the § 1983
plaintiff's still-outstanding conviction.  Because of
doctrines like independent source and inevitable
discovery, and especially harmless error, such a § 1983
action, even if successful, would not <u>necessarily</u> imply
that the plaintiff's conviction was unlawful.  In order
to recover compensatory damages, however, the § 1983
plaintiff must prove not only that the search was
unlawful, but that it caused him actual, compensable
injury, which, we hold today, does <u>not</u> encompass the
"injury" of being convicted and imprisoned (until his
conviction has been overturned).

<u>Heck</u>, 512 U.S. at 487 n.7.

More recently, the Supreme Court determined the accrual date

of a claim arising from pre-trial events, there a false arrest

claim, where the plaintiff asserted that the accrual date should

be deferred under the <u>Heck</u> rule because the false arrest led to a

coerced confession which was introduced at his trial, producing

his conviction and incarceration.  Rejecting this argument, the

Court relied upon the traditional rule of accrual, "the tort

cause of action accrues ... when the wrongful act or omission

results in damages.  The cause of action accrues even though the

full extent of the injury is not then known or predictable."

<u>Wallace v. Kato</u>, 127 S.Ct. at 1097 (citations omitted).

As <u>Wallace</u> further explains, where a plaintiff files a claim

challenging pre-trial events, related to rulings that will likely

be made in a pending or anticipated criminal trial, it is within

the power of the district court to stay the civil action until

12

the criminal case or the likelihood of a criminal case is ended.
"If the plaintiff is ultimately convicted, and if the stayed
civil suit would impugn that conviction, Heck will require
dismissal; otherwise, the civil action will proceed, absent some
other bar to suit." Wallace, 127 S.Ct. at 1098 (citations
omitted).

    1.   The NAMGLA "searches"

    Plaintiff alleges that Defendants MacFarlane and Riedel
unlawfully obtained private information in violation of the
Fourth Amendment and 18 U.S.C. § 2518, when they accessed the
NAMGLA website without a warrant to obtain evidence.[6]

    Plaintiff presented this claim, twice, unsuccessfully, to
the court in his criminal proceeding. See United States v.
Christie, Crim. No. 07-0332 (D.N.J.) (Docket Entries Nos. 51,
105). Based upon the Opinions denying Plaintiff's motions in the
criminal case, it appears that all evidence supporting
Plaintiff's convictions flows from the identification of
Plaintiff as a particular user of the NAMGLA website, "franklee."
Thus, it appears that a favorable outcome in this proceeding,
with respect to this claim, would necessarily imply the

_____

    [6] It is not possible to determine from the allegations of
the Complaint whether this claim is timely, as Plaintiff alleges.
For purposes of this Opinion and accompanying Order, the Court
will assume, without deciding, that the claim is timely.  In any
event, it is clear that the claim accrued, and the limitations
period began to run, prior to the entry of judgment in the
criminal matter.

invalidity of Plaintiff's criminal conviction.  In addition, the appeal of the conviction remains pending in the Court of Appeals for the Third Circuit.  Accordingly, this claim must be stayed under the rationale of Wallace v. Kato.

Should Plaintiff wish to pursue this claim, he must so advise the Court by filing a motion to re-open this matter within 60 days after his conviction has been "invalidated" by reversal on direct appeal, issuance of a collateral order, or otherwise.

2.   The Affidavits

Plaintiff alleges that Defendants Cristiano and Magness should have known, based upon electronic communications with Special Agent MacFarlane dated July 6 through July 11, 2006, that the 18-minute, 52-second video referenced in their affidavits in support of the search warrant was not posted by the NAMGLA user named "franklee" and identified as Plaintiff.

In its pre-trial Opinion denying Plaintiff's motion to suppress evidence based upon deficiencies in the search warrant affidavits, the criminal trial court held that the information regarding this video "alone" demonstrated probable cause to issue the search warrant.  See United States v. Christie, Crim. No. 07-0332 (D.N.J.) (Docket Entry No. 51 at 52-54).  Thus, again, it appears that a favorable outcome in this proceeding, with respect to this claim, would necessarily imply the invalidity of Plaintiff's criminal conviction.  In addition, as previously

14

noted, the criminal action remains pending in the Court of Appeals. Accordingly, this claim must be stayed under the rationale of <u>Wallace v. Kato</u>.

Should Plaintiff wish to pursue this claim, he must so advise the Court by filing a motion to re-open this matter within 60 days after his conviction has been "invalidated" by reversal on direct appeal, issuance of a collateral order, or otherwise.

3. <u>The alleged failure to serve the warrant</u>

This claim appears to be time-barred and, in any event, is meritless. Thus, this claim will be dismissed with prejudice.[7]

---

[7] A court may dismiss a complaint for failure to state a claim, based on a time-bar, where "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." <u>Bethel v. Jendoco Construction Corp.</u>, 570 F.2d 1168, 1174 (3d Cir. 1978) (citation omitted). Although the statute of limitations is an affirmative defense which may be waived by the defendant, it is appropriate to dismiss <u>sua sponte</u> under 28 U.S.C. § 1915(e)(2) a <u>pro se</u> civil rights claim whose untimeliness is apparent from the face of the Complaint. <u>See</u>, <u>e.g.</u>, <u>Jones v. Bock</u>, 127 S.Ct. 910, 920-21 (2007) (if the allegations of a complaint, "for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim"). <u>See also</u> <u>Pino v. Ryan</u>, 49 F.3d 51, 53 (2d Cir. 1995) (holding, under former § 1915(d) <u>in forma pauperis</u> provisions, that <u>sua sponte</u> dismissal prior to service of an untimely claim is appropriate since such a claim "is based on an indisputably meritless legal theory"); <u>Hunterson v. DiSabato</u>, 2007 WL 1771315 (3d Cir. 2007) ("district court may <u>sua sponte</u> dismiss a claim as time barred under 28 U.S.C. § 1915A(b)(1) where it is apparent from the complaint that the applicable limitations period has run") (citing <u>Jones v. Bock</u>, <u>Pino v. Ryan</u>) (not precedential); <u>Hall v. Geary County Bd. of County Comm'rs</u>, 2001 WL 694082 (10th Cir. June 12, 2001) (unpub.) (applying <u>Pino</u> to current § 1915(e)); <u>Rounds v. Baker</u>, 141 F.3d 1170 (8th Cir. 1998)(unpub.); <u>Johnstone v. United States</u>, 980 F.Supp. 148 (E.D. Pa. 1997) (applying <u>Pino</u> to current § 1915(e)). The requirements

Civil rights claims are best characterized as personal injury actions and are governed by the applicable state's statute of limitations for personal injury actions.  See Wilson v. Garcia, 471 U.S. 261, 280 (1985).  Accordingly, New Jersey's two-year limitations period on personal injury actions, N.J. Stat. Ann. § 2A:14-2, governs Plaintiff's claims.  See Montgomery v. DeSimone, 159 F.3d 120, 126 & n.4 (3d Cir. 1998); Cito v. Bridgewater Township Police Dept., 892 F.2d 23, 25 (3d Cir. 1989).  Under N.J. Stat. Ann. § 2A:14-2, an action for an injury to the person caused by a wrongful act, neglect, or default must be commenced within two years of accrual of the cause of action.  Cito, 892 F.2d at 25; accord Brown v. Foley, 810 F.2d 55, 56 (3d Cir. 1987).

"[T]he accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law."  Wallace v. Kato, 127 S.Ct. 1091, 1095 (2007) (emphasis in original).

A claim accrues as soon as the injured party "knew or had reason to know of the injury that constitutes the basis of his action."  Sandutch v. Muroski, 684 F.2d 252, 254 (3d Cir. 1982).

---

of 28 U.S.C. § 1915A (governing civil actions in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity) and 42 U.S.C. § 1997e (governing actions brought with respect to prison conditions) that federal courts review and dismiss any complaint that fails to state a claim parallels the provision in 28 U.S.C. § 1915(e).

16

See also Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 (3d Cir. 1994). "Plaintiff'S actual knowledge is irrelevant. Rather, the question is whether the knowledge was known, or through reasonable diligence, knowable. Moreover, the claim accrues upon knowledge of the actual injury, not that the injury constitutes a legal wrong." Fassnacht v. United States, 1996 WL 41621 (E.D. Pa. Feb. 2, 1996) (citing Oshiver, 38 F.3d at 1386).

Unless their full application would defeat the goals of the federal statute at issue, courts should not unravel states' interrelated limitations provisions regarding tolling, revival, and questions of application. Wilson v. Garcia, 471 U.S. at 269.

New Jersey statutes set forth certain bases for "statutory tolling." See, e.g., N.J.S.A. § 2A:14-21 (detailing tolling because of minority or insanity); N.J.S.A. § 2A 14-22 (detailing tolling because of nonresidency of persons liable). New Jersey law permits "equitable tolling" where "the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass," or where a plaintiff has "in some extraordinary way" been prevented from asserting his rights, or where a plaintiff has timely asserted his rights mistakenly by either defective pleading or in the wrong forum. See Freeman v. State, 347 N.J. Super. 11, 31 (citations omitted), certif. denied, 172 N.J. 178 (2002). "However, absent a showing

17

of intentional inducement or trickery by a defendant, the doctrine of equitable tolling should be applied sparingly and only in the rare situation where it is demanded by sound legal principles as well as the interests of justice." Id.

When state tolling rules contradict federal law or policy, in certain limited circumstances, federal courts can turn to federal tolling doctrine. See Lake v. Arnold, 232 F.3d 360, 370 (3d Cir. 2000). Under federal law, equitable tolling is appropriate in three general scenarios:

> (1) where a defendant actively misleads a plaintiff with respect to her cause of action; (2) where the plaintiff has been prevented from asserting her claim as a result of other extraordinary circumstances; or (3) where the plaintiff asserts her claims in a timely manner but has done so in the wrong forum.

Id. n.9.

Here, assuming the truth of the allegations in the Complaint, Plaintiff knew on the date the warrant was executed in his presence, in July 2006, that the search was conducted without providing him a copy of the search warrant or permitting him to read the warrant. The Complaint is dated February 12, 2009, more than two years later. Plaintiff alleges no facts or extraordinary circumstances that would permit statutory or equitable tolling under either New Jersey or federal law. Thus, Plaintiff's claims regarding the failure to serve the search warrant is time-barred and will be dismissed with prejudice.

In the alternative, the claim is meritless.

18

Neither the Fourth Amendment nor Rule 41[8] of the Federal Rules of Criminal Procedure requires the executing officer to serve the warrant on the owner before commencing a search.  <u>See</u> <u>Groh v. Ramirez</u>, 540 U.S. 551, 562 n.5 (2004).  In <u>Groh</u>, the Supreme Court was not presented with, and did not decide, the question "[w]hether it would be unreasonable to refuse a request to furnish the warrant at the outset of the search when ... an occupant of the premises is present and poses no threat to the officers' safe and effective performance of their mission."  <u>Id.</u>

More recently, in <u>United States v. Grubbs</u>, 547 U.S. 90, 97-99 (2006), the Supreme Court re-emphasized that the Fourth

---

[8] Pursuant to Rule 41(f)(1)(C) of the Federal Rules of Criminal Procedure, "The officer executing the warrant must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken or leave a copy of the warrant and receipt at the place where the officer took the property."

Federal courts have long acknowledged that the requirement to provide a copy of the warrant to the owner after search of the premises is a ministerial task, and that failure to comply with the requirement does not render a reasonable search retroactively unreasonable, especially without a showing of prejudice.  <u>See</u>, e.g., <u>U.S. v. Cafero</u>, 473 F.2d 489, 498-99 (3d Cir. 1972), <u>cert. denied</u>, 417 U.S. 918 (1974); <u>U.S. v. Marx</u>, 635 F.2d 436 (5th Cir. 1981); <u>U.S. v. McKenzie</u>, 446 F.2d 949 (6th Cir. 1971); <u>U.S. v. Klapholz</u>, 17 F.R.D. 18 (S.D.N.Y. 1955), <u>aff'd</u>, 230 F.2d 494 (2d Cir. 1956), <u>cert. denied</u>, 351 U.S. 924 (1956).  Here, Plaintiff alleges no prejudice; he was present for the search.  In any event, this Court declines to imply a <u>Bivens</u> remedy solely based upon an alleged violation of Rule 41.  <u>Cf.</u> <u>Baranski v. Fifteen Unknown Agents of Bureau of Alcohol, Tobacco, and Firearms</u>, 452 F.3d 433, 444 (6th Cir. 2006), <u>cert. denied</u>, 549 U.S. 1321 (2007).  The claim based upon the alleged violation of Rule 41(f) will be dismissed with prejudice.

Amendment does not require service of the warrant prior to its
execution.  Rejecting the lower court's conclusion that an
anticipatory search warrant must set forth the "triggering
condition," the Court explained that:

> This argument assumes that the executing officer must
> present the property owner with a copy of the warrant
> before conducting his search.  In fact, however,
> neither the Fourth Amendment nor Federal Rule of
> Criminal Procedure 41 imposes such a requirement.  "the
> absence of a constitutional requirement that the
> warrant be exhibited at the outset of the search, or
> indeed until the search has ended, is ... evidence that
> the requirement of particular description does not
> protect an interest in monitoring searches."  The
> Constitution protects property owners not by giving
> them license to engage the police in a debate over the
> basis for the warrant, but by interposing, ex ante, the
> "deliberate, impartial judgment of a judicial officer
> ... between the citizen and the police." and by
> providing, ex post, a right to suppress evidence
> improperly obtained and a cause of action for damages.

547 U.S. at 98-99 (citations omitted).

Thus, for all the foregoing reasons, the claim based upon
failure to provide Plaintiff with a copy of the search warrant
will be dismissed with prejudice.

    4.   The address issue

Plaintiff alleges that Defendant Special Agent Cristiano
knew or should have known that Plaintiff resided at 68A, rather
than 68, Phillips Road.

This Court can construe no constitutional violation based
upon this factual allegation.  To the extent Plaintiff seeks to
challenge the initial search of his mother's residence at 68

20

Phillips Road, he lacks standing.  Accordingly, this claim will be dismissed with prejudice.

B.   <u>Grand Jury Testimony</u>

The Complaint fails to state a claim for violation of Plaintiff's due process rights based upon allegedly false testimony given by Defendant Special Agent James Granozio before the grand jury.

Witnesses, including police witnesses, are absolutely immune from civil damages based upon their testimony.  <u>See Briscoe v. LaHue</u>, 460 U.S. 325, 341-46 (1983).  That immunity extends to investigators testifying in a grand jury proceeding.  <u>Kulwicki v. Dawson</u>, 969 F.2d 1454, 1467 n.16 (3d Cir. 1992).  Accordingly, the claim against Defendant Special Agent James Granozio will be dismissed with prejudice.

V.   <u>CONCLUSION</u>

For the reasons set forth above, the claims against Special Agents MacFarlane and Riedel arising out of their alleged monitoring of the NAMGLA website, and the claims against Special Agents Cristiano and Magness arising out of their alleged false statements in the search warrant affidavits, will be stayed until further order of this Court.  All other claims will be dismissed with prejudice, pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim.

It does not appear that Plaintiff could amend the Complaint at this time to overcome the deficiencies noted herein.

An appropriate order follows.

Dennis M. Cavanaugh
United States District Judge

Dated: 10/17/09